**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:24-cv-22770-GAYLES/REID**

TYREE JACKSON, as father and natural
guardian of minor T.J.,

          Plaintiff,

vs.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE, a
Panamanian Corporation,

          Defendant.

_____/

## <u>REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

**THIS CAUSE** came before the Court upon Defendant Carnival Corporation's ("Defendant" or "Carnival") Motion for Summary Judgment. ("Motion") [ECF No. 90].[1] Plaintiff Tyree Jackson, as father and natural guardian of minor T.J., ("Plaintiff") filed a Response in opposition. ("Response") [ECF No. 111]. Defendant filed a Reply. [ECF No. 122]. The Motion was referred to the undersigned for Report and Recommendation by The Honorable Darrin P. Gayles. *See* [ECF No. 83]. As discussed below, it is **RECOMMENDED** that Defendant's Motion [ECF No. 90] be **DENIED**.

## I.  BACKGROUND[2]

This is a maritime personal injury action in which Plaintiff seeks to recover damages for

---

[1] The Court relies on the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[2] The following facts are taken from Plaintiff's Complaint ("Compl.") [ECF No. 1], Defendant's Statement of Material Facts ("DSMF") [ECF No. 89], Plaintiff's Response to Defendant's

injuries his minor daughter, T.J., sustained during a slip-and-fall accident while aboard Defendant's cruise ship, the *Mardi Gras*. *See generally* Compl. Plaintiff alleges that on July 23, 2023, at approximately 9:45 a.m., T.J. was injured while exiting the main pool on Deck 16 of the *Mardi Gras*. *See* DSMF ¶ 1; PSMF ¶ 1. CCTV footage from the incident shows T.J. exiting the pool by climbing out of the water onto a raised bench, or coping, that runs the circumference of the pool.[3] *See* DSMF ¶ 2; PSMF ¶ 2. T.J. then descended from the raised coping onto the floor, and as her feet contacted the ground she immediately slipped and fell backwards.[4] *See id.* Plaintiff specifically alleges that T.J. slipped "due to an unreasonably slippery floor/deck near the aft side of the Beach Pool on Deck 16." *See* Compl. ¶ 16. Plaintiff further alleges that Defendant "knew this area was unreasonably slippery" and "failed to implement a timely solution . . . or block the area from passenger use." *See id.* ¶ 23. It is also alleged that Defendant knew the area was "damaged" and Defendant failed to "timely repair or block the area from passenger use." *See id.* ¶ 24. As a result of the fall, T.J. allegedly suffered a traumatic brain injury which included a retrocerebellar epidural hematoma, or "brain bleed." *See id.* ¶ 70. Since the incident, T.J.'s injuries

---

Statement of Material Facts ("PSMF") [ECF No. 110], Defendant's Reply Statement of Material Facts ("DRSMF") [ECF No. 123] and a review of the corresponding record citations and exhibits.

[3] The CCTV footage of the incident was conventionally filed with the Court. *See* [ECF No. 89-1].

[4] The Parties contest the description of T.J.'s slip and fall. Defendant maintains T.J. jumped off the coping surrounding the pool and landed on the pool deck with both feet before slipping and falling backwards. *See* DSMF ¶ 2. Plaintiff maintains that T.J. stepped off the pool deck and then slipped and fell onto the pool deck. *See* PSMF ¶ 2. The Court notes that Plaintiff's own expert characterized T.J.'s movement as "hopping" down from the raised area. *See* [ECF No. 110-19 ("Given T.J.'s height, it is foreseeable that she would not be able to comfortably and safely step off the 17-inch-high coping wall onto the pool deck surface, and *would hop down* from the wall as any child would foreseeably do as well." (emphasis added))]; *see also* PSMF ¶ 30. The Court's review of the CCTV footages shows T.J. climbing out of the pool onto the raised coping. She then descends, with both feet forward and in the air. Once T.J. lands on the deck floor, she immediately slips and falls backwards hitting her head on the ground. A woman, who appears to be T.J.'s mother, was walking towards T.J. as she slipped, and picks T.J. up.

have purportedly continued to restrict her activities and have caused her permanent neurocognitive deficits and significant emotional distress. *See id.* ¶ 79.

Plaintiff commenced the instant Action against Defendant on July 19, 2024. *See generally* Compl. In the Complaint, Plaintiff asserts three claims against Defendant: (1) Negligence (Vicarious Liability for Acts and Omissions of Defendant's Crew Members/Employees) (Count I); (2) Negligence (Direct Negligence of Defendant) (Count II); and Negligence (Direct Negligence of Defendant for Failure to Train) (Count III). [5] *See generally* Compl. Defendant moves for summary judgment on all counts. *See generally* [ECF No. 90].

## II.    LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

---

[5] The Court notes that though Plaintiff only asserts three negligence counts, each claim appears to be comprised of various distinct theories of negligence. For example, Count II asserts direct negligence against Defendant. *See* Compl. ¶ 95. Plaintiff alleges that Defendant had a duty of reasonable care and to "warn Plaintiff of all dangers it knew or should have known." *Id.* ¶ 96. However, in alleging breach, Plaintiff asserts several independent negligence theories, including, but not limited to, negligent failure to maintain, negligent failure to warn, and negligent supervision. *See id.* ¶ 97; *see also Tang v. NCL (Bahamas) Ltd.*, 472 F. Supp. 3d 1227, 1229 (S.D. Fla. 2020) ("Each theory of negligence is a separate cause of action that must be asserted independently and with corresponding supporting factual allegations.").

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## III.    DISCUSSION

Defendant argues that it is entitled to summary judgment because: (1) the record is devoid of any evidence that there was a dangerous condition on the subject flooring prior to the incident; (2) Defendant had no duty to warn about an open and obvious condition; and (3) if the flooring was a dangerous condition, then Defendant had no actual or constructive notice of it. *See* [ECF No. 90 at 5–20]. In response, Plaintiff argues that: (1) there is abundant evidence of a dangerous condition; (2) wetness of flooring may be obvious, but unreasonable slipperiness is not, and even if it was, it would not defeat all Plaintiff's claims; and (3) Defendant had actual and constructive notice of the dangerous condition. *See* [ECF No. 111 at 4–18]. The Court addresses each argument in turn.

### A.    Applicable Maritime Negligence Principles

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of [his] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236–37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Miller v. NCL (Bahamas) Ltd.*, No. 1:15-CV-22254-UU, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers."). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015) (internal quotation marks and citation omitted).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In

5

other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797. "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition. *Miller*, 2016 WL 4809347, at *4.

Moreover, to establish that the owner of a ship in navigable waters breached its duty of care, a plaintiff must show: "(1) a dangerous condition existed; (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019) (quoting *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-CV-22105-UU, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013)).

"Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the defective condition existed for a sufficient period of time to invite corrective measures." *Guevara*, 920 F.3d at 720 (cleaned up). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988)).

## B.      The Record Is Not Devoid of Any Evidence of a Dangerous Condition

First, Defendant argues that it is entitled to summary judgment because there is no record evidence that a dangerous condition existed "immediately prior" to the incident. *See* [ECF No. 90 at 6–7]. Defendant contends that based on deposition testimony, neither T.J. nor her mother saw water on the ground "underneath the exact spot where T.J. landed and subsequently slipped, prior to her fall." *See* [*id.*]; *see also* [ECF No. 122 at 2–3]. Defendant also posits that crewmember Nuri Uri Ubaidillah ("Ubaidillah") corroborates this testimony by testifying that he did not observe any water "in the precise location where T.J. fell." *See* [ECF No. 90 at 7]; [ECF No. 122 at 2–3]. Defendant further argues that its review of the CCTV footage shows no puddles of water in the section of flooring where T.J. slipped, "particularly when such puddles can readily be observed elsewhere on the decking[.]" *See* [ECF No. 90 at 8]. Defendant lastly points to its expert, Dr. Troxel, who was "unable to observe any water" on the flooring after examining the CCTV footage through image enhancement software. *See* [ECF No. 90 at 8]; DSMF ¶ 12–13.

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that there is a genuine dispute of material fact as to whether a dangerous condition existed that caused T.J.'s fall. Here, Plaintiff alleges that the dangerous condition was an "unreasonably slippery floor/deck" caused by water on the floor near the aft side of the Beach Pool on Deck 16. *See* Compl. ¶ 16; *see also* PSOMF ¶ 43–44 (describing the floor being wet and T.J.'s mother testifying there was "water all around"). "Plaintiffs are generally the masters of their complaints and can thus choose how to plead their theory of liability." *Wiegand v. Royal Caribbean Cruises Ltd.*, No. 21-12506, 2023 WL 4445948, at *2 (11th Cir. July 11, 2023) (citing *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021)). As such, the Eleventh Circuit has noted that courts "routinely accept[] the plaintiff's definition of the dangerous condition(s) that caused [her] injury." *Id.* The

Court must therefore focus only on whether Plaintiff has adduced sufficient evidence establishing the existence of a wet deck floor on the date of the incident.

Defendant claims there is no evidence that the pool deck floor was wet or had water on it immediately before the incident. *See* [ECF No. 90 at 7–8]; DSMF ¶ 5–13. "As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). Further, "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018).

Although Defendant argues that neither T.J. nor her mother observed water on the ground immediately before the fall, T.J. testified that she did slip as soon as she touched the floor, that she was "certain" that the floor was wet and caused her to slip, and that she "noticed that the floor was wet" after she slipped. *See* [ECF No. 89-4 at 124:9–125:17]. Moreover, T.J.'s mother, despite testifying she did not see water in the exact spot T.J. landed prior to the fall, did testify that "there was water all around" the area. *See* [ECF No. 89-5 at 291:4–12]. Though both T.J. and her mother did not see water on the floor immediately prior to the accident, their testimony regarding post-fall inferences are not "blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law[.]" *See Feliciano*, 707 F.3d at 1253; *see also Hostert v. Carnival Corp.*, No. 21-CV-23701, 2024 WL 68292, at *2 (S.D. Fla. Jan. 5, 2024) (denying summary judgment for defendant where plaintiff did not see liquid on floor before falling but felt "wetness on her foot as she was slipping[,]" felt her "shoe slide[,]" and leg "twist" as she fell and noticed water after fall); *Shellman v. Feys, II, Inc.*, No. CV504-110, 2006 WL 8435535, at *4 (S.D. Ga. Jan. 25, 2006) (denying

summary judgment for defendant where plaintiff did not see any water before slipping but inferred ground was wet from recent mopping in the area and wet pants after fall).

Moreover, despite Defendant's expert, Dr. Troxel, opining that she did not see water on the deck surface where T.J. fell from CCTV footage, she also admitted during her deposition that the enhanced CCTV footage was "extremely pixelated" and "blurry[.]" *See* [ECF No. 89-11 at 63:6–20]. Dr. Troxel also testified that because of the extreme pixelation, she could not "specifically see the condition of the walkway surface prior to T.J.'s incident." *See* [*id.*]. Further, when asked whether the evidence, or lack thereof, could also establish that the deck was wet before the fall, Dr. Troxel responded "I suppose you could go either way with that information, sure." *See* [*id.*]. Similarly, crewmember Ubaidillah, who was present in the area shortly after the fall and is seen on the CCTV footage mopping in the area, testified "the floor is always wet[,]" that he was "not sure [if the area was] wet or dry at the time." *See* [ECF No. 89-6 at 127:23–24, 140:8–11]. Aquatic attendant Harry King ("King") also testified there is water on the pool deck "most of the time." *See* [ECF No. 89-7 at 108:21–109:8]. As such, the Court cannot say that Plaintiff and T.J.'s testimony regarding the deck's dangerous condition is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law as to discount it on summary judgment. *See Feliciano*, 707 F.3d at 1253.

Moreover, as argued by Plaintiff, circumstantial and post-fall evidence indicating the existence of dangerous conditions is enough to survive summary judgment. *See Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1274 (S.D. Fla. 2019) (finding circumstantial evidence to support inference of dangerous condition where "Plaintiff and her sister could not *see* the puddle . . . [y]et, they both eventually inferred there was a large puddle of water from the moisture on

Plaintiff's body." (emphasis in original)). And, as the Eleventh Circuit averred in *Brady v. Carnival Corporation*,

> [T]he relevant "risk-creating condition" . . . was not . . . the presence of the particular "puddle on which [plaintiff] slipped" . . . [r]ather, the salient issue is whether Carnival knew, more generally, that the area of the deck where [Plaintiff] fell had a reasonable tendency to become slippery—and thus dangerous to passengers—due to wetness from the pool.

33 F.4th 1278, 1281 (11th Cir. 2022). As such, Defendant's argument that the specific tile T.J. slipped on did not appear to be wet misses the point and is also disputed by the record. Therefore, it is **RECOMMENDED** that summary judgment be **DENIED** as to this aspect.

### C.        Open and Obvious Danger

Next, Defendant argues that it had no duty to warn of the open and obvious danger of water being present on the floor near a pool. Separately, but in tandem with its first argument, Defendant also argues that the danger of jumping "into or near a pool" is an open and obvious danger with no duty to warn attached. *See* [ECF No. 90 at 10–15]. The Court disagrees.

As to Defendant's first argument, while wetness around a pool may be open and obvious, unreasonable slipperiness, as alleged by Plaintiff, is not. *See* Compl. ¶ 16 (alleging T.J. fell due to an "unreasonably slippery floor/deck"); *see also Andersen v. Royal Caribbean Cruises Ltd.*, 543 F. Supp. 3d 1346, 1355 (S.D. Fla. 2021) ("[W]hile the wetness of the floor may have been open and obvious . . . there is evidence that the slipperiness of the floor was both unreasonable and not open and obvious."). In general, the "duty to warn in the maritime tort context extends to only known dangers which are not apparent or obvious." *Smith v. Royal Caribbean Cruises, Ltd.*, 620 F. App'x 727, 730 (11th Cir. 2015). Open and obvious conditions are "discernable through common sense and the ordinary use of eyesight." *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015).

The dangerous condition here is the slipperiness of Defendant's pool deck when wet. *See* [ECF No. 111 at 7]. The issue is therefore, "whether a reasonable person would have observed the [pool deck's] wetness and *appreciated its resultant slickness*." *See Frasca v. NCL (Bahamas) Ltd.*, 654 F. App'x 949, 952 (11th Cir. 2016) (emphasis added).

Defendant argues that the danger of a wet pool deck floor is open and obvious based on T.J.'s prior experience with swimming pools. *See* [ECF No. 90 at 11]. Namely, Defendant contends that T.J. and her mother have testified that "[T.J.] [h]as plenty of prior experience with using pools[,]" and that T.J.'s testimony "[made it] clear that T.J. was aware of Carnival's universal rules for safe pool use" regarding the slipperiness of pool decks. *See* [*id.* at 13]; DSMF ¶¶ 14–18. Moreover, Defendant argues that there were warnings around the pool area which cautioned of the "potential hazards associated with running and jumping near pools and wet floors generally." [ECF No. 90 at 13]. Though T.J. and her family testified that they did not see these warnings or rules, Defendant argues that they had the opportunity to and "should have appreciated that water on the deck could result in slippery conditions[.]" [*Id.* at 13–14]. This however misses the mark.

*Frasca* is instructive here. In *Frasca*, the plaintiff slipped on a puddle of water on an outdoor cruise ship deck and testified that he was able to observe that the deck was wet and shiny with "puddles of water" on the surface. *See Frasca*, 654 F. App'x at 952–53. In granting summary judgment for the defendant, the district court found that a reasonable person would have seen the deck to be more slick than usual and that it was an open and obvious danger. *Id.* The Eleventh Circuit reversed, crediting the plaintiff's expert, stating "[t]he [expert] report suggests that a reasonable person would have known that the deck would be slippery, *but not as slippery as it actually was*." *Id.* (emphasis added). Therefore, based on the expert's findings, a jury could conclude the deck's visible wetness and other conditions would not alert the reasonable observer

to the extent of its slipperiness, creating a dispute of material fact. *See id.*; *see also Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 250–51 (11th Cir. 2018) (reversing summary judgment for cruise ship slip and fall and stating, "although the wetness of the deck was open and obvious, the unreasonably slippery state of the deck may not have been open and obvious to a reasonable person.").

Similarly, here, though T.J. and her mother testified they had prior experience in pools and around pool decks, and that her mother testified that there was "water all around" the area, it is not clear that they appreciated the degree of slipperiness of the deck. *See* [ECF No. 90 at 12–13]; PSOMF ¶ 44. Indeed, Plaintiff's expert, Thomas Lodge, opined that the Coefficient of Friction ("COF") testing in the area produced an average wet COF of 0.17. *See* [ECF No. 110-11 at 16]. Lodge opines that this COF is "statistically the same as" the score given to polished granite flooring. *See* [*id.* at 23 (comparing to industry standard ATSM F2508 validation study)]. Moreover, Defendant's corporate representative testified that Defendant's minimum standard for wet pool-deck flooring is a COF of 0.42. *See* [ECF No. 89-14 at 46:25–47:8]. Therefore, even based on Defendant's own standards, a dispute remains as to the reasonable slipperiness of the deck.

Moreover, Plaintiff has provided several statements of passengers that have slipped on the same deck of the *Mardi Gras* stating that the deck was unusually slippery. *See* PSMF ¶¶ 28, 50, 65. As such, like in *Frasca*, there remains evidence that the degree of slipperiness of the pool deck was not an open and obvious condition, foreclosing summary judgment on this issue. *See Andersen*, 543 F. Supp. 3d at 1355 (denying summary judgment based on expert report stating

floor was unreasonably slippery when wet and stating "[w]etness is not the same thing as unreasonable slipperiness, despite Defendant's apparent argument to the contrary.").[6]

Next, Defendant argues that T.J.'s exit from the pool was an open and obvious danger. Specifically, Defendant avers that there were multiple warnings on the ship, and in Defendant's guest ticket contract, that forbid "running, horseplay, jumping, or diving" around the pool area. *See* [ECF No. 90 at 13–15]. And though T.J. and her parents testified they did not see these warnings, Defendant argues there was sufficient opportunity for them to be apprised of the same, and therefore the danger of "jumping into or near a pool" was "open and obvious." [*Id.* at 14–15]. Therefore, Defendant requests the Court enter summary judgment in its favor on Plaintiff's failure to warn claim. However, this too misses the mark.

As an initial matter, the parties disagree as to the factual characterization of T.J.'s exit from the pool. Defendant describes T.J.'s movement as "jumping" down from the raised coping surrounding the pool, whereas Plaintiff argues that T.J. stepped down from the pool. *See* DSMF ¶ 2; PSMF ¶ 2. Though Defendant argues that the Court should consider T.J.'s movement as a jump, ostensibly contributing to the proximate cause of her injury (rather than the wet deck), and that T.J. was apprised of the danger based on prior experience, this is a factual question and credibility determination that is better left to the trier of fact. *See SIS, LLC v. Stoneridge Holdings, Inc.*, No.

---

[6] Defendant largely relies on *Mendel v. Royal Caribbean*, for its proposition that T.J.'s prior pool experience should have apprised her of the open and obvious danger of slipping on the pool deck. No. 10-23398-CIV, 2012 WL 2367853 (S.D. Fla. June 21, 2012); *see also* [ECF No. 90 at 12]. This Court held in *Mendel* that the step on which the plaintiff slipped while exiting the pool was "open and obvious" and the plaintiff conceded that nothing prevented her from seeing the step. *See Mendel*, 2012 WL 2367853 at *4–5. *Mendel*, however, is from 2012, that did not have the benefit of the Eleventh Circuit's guidance in the later decided *Frasca* and *Petersen* cases. Moreover, it does not appear that COF testing as to the degree of slipperiness was at issue in *Mendel*, nor did the plaintiff in *Mendel* provide any evidence of prior similar incidents as Plaintiff does here. *See Mendel*, 2012 WL 2367853 at *4 ("Furthermore, Plaintiff admits there is no record evidence indicating Defendant was on notice of any prior accidents or incidents[.]").

1:17-CV-01816-SDG, 2020 WL 4903992, at *5 (N.D. Ga. Aug. 20, 2020) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions,' and cannot be made by the district court.") (quoting *Anderson*, 477 U.S. at 255).

Nevertheless, when viewing all inferences in a light most favorable to Plaintiff, it is not clear that Defendant's warning signs would transform the unreasonably slippery pool deck, as alleged by Plaintiff, into an open and obvious danger. The Court finds *Cosmo v. Carnival Corporation* to be instructive here. 272 F. Supp. 3d 1336 (S.D. Fla. 2017).

In *Cosmo*, the plaintiff was injured while playing an organized game onboard a cruise ship. *Id.* at 1337. The plaintiff, while running down an aisle of chairs on the lido deck, jumped over a lounge chair and slipped on what he described as a "big puddle of water from the pool." *Id.* The plaintiff testified that the puddle was not readily visible at the time, and one of his experts opined that the slip resistance of the dock was "below industry standards and [was] too slippery." *Id.* One of Carnival's summary judgment arguments in *Cosmo*, like here, was that the danger of participating in the game and jumping over a chair on the lido deck was open and obvious. *See id.* at 1343. This Court, however, disagreed and noted that "Carnival's argument that the various risks attendant to participating in the [game] were open and obvious is defeated by the evidence [the plaintiff] has submitted showing the floor was *unreasonably* slippery." *See id*. at 1344 (emphasis in original) (citing *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1095 (S.D. Fla. 2014) (finding that lack of slip resistance of wet tile was not necessarily open and obvious). Namely, the *Cosmo* Court highlighted evidence inferring Carnival knew that people would "rush, run, and jump" during the game and evidence pointing towards the deck floor being "*excessively* slippery". *See*

14

*id.* (emphasis in original). Therefore, the Court could not "find that the risks were necessarily obvious to [the plaintiff,]" as to grant summary judgment for Carnival. *See id.*

Similarly, here, Plaintiff has provided employee testimony indicating Carnival knew that their decks could become slippery when wet and cause guests to slip and fall. *See* [ECF No. 89-6 at 69:20–23, 70:3–9, 76:1–10, 82:9–83:13]; [ECF No. 89-7 at 108:21–109:8]; *see also infra* Discussion § III.D. Indeed, following T.J.'s and another guest's fall on the pool deck, Crewmember Ubaidillah testified he began mopping because someone fell and the floor "[was] still wet." *See* [ECF No. 89-6 at 142:17–143:18]. Plaintiff provides passenger testimony indicating that the Deck 16 pool deck of the *Mardi Gras* was unusually slippery when wet, and more slippery than other decks they have experienced. *See* PSMF ¶ 50. Plaintiff provides expert slip resistance testing done on the Deck 16 pool deck indicating a wet-COF that is below industry and Defendant's own standard for wet flooring. *See* [ECF No. 110-11 at 16]; [ECF No. 89-14 at 46:25–47:8]. Plaintiff provides passenger statements indicating that many passengers entered and exited the Deck 16 pool over the same raised coping as T.J. did, despite Carnival's warnings to the contrary, and that crewmembers had seen the same. *See* PSMF ¶¶ 73–74. Moreover, Plaintiff has also provided evidence of substantially similar incidents occurring on the same type of deck flooring over the last three years, seven of which occurred on the same deck of the *Mardi Gras*. *See* PSMF ¶¶ 65–66; [ECF No. 111 at 13].

As in *Cosmo*, the Court here cannot find that the risks of the slippery floor were necessarily obvious to T.J. and Plaintiff. Rather, Plaintiff has presented sufficient evidence from which a factfinder could infer that Defendant knew that the pool deck floor would become unreasonably slippery when wet, that Defendant had knowledge that multiple passengers entered and exited the pool in the same way as T.J., and that Defendant knew multiple passengers had slipped and fell

15

due to the pool deck's slickness. Such evidence is enough to withstand summary judgment. Therefore, the undersigned **RECOMMENDS** summary judgment be **DENIED** as to this aspect.

### D.     The Record Is Not Devoid of Evidence of Actual or Constructive Knowledge

Lastly, Defendant argues that even if there was a dangerous condition onboard the *Mardi Gras*, then Defendant had no actual or constructive knowledge of it. *See* [ECF No. 90 at 15–20]. Specifically, Defendant argues (1) the record is devoid of actual notice because there was no indication that the "specific section of flooring T.J." landed on was wet and there is no testimony that it was wet; and (2) Defendant had no constructive knowledge of any danger because there are no previous accidents that are substantially similar to Plaintiff's accident. *See* [*id.*]. Plaintiff rebuts by arguing that Defendant had actual notice of the dangerous condition based on (1) warnings it placed around the pool and (2) remedial measures it took immediately after the incident. *See* [ECF No. 111 at 11–13]. Plaintiff further argues that Defendant had constructive notice of the dangerous condition of its flooring based on substantially similar incidents of slip and falls on the same flooring. *See* [*id.* at 13–15].

As an initial matter, Defendant's Motion rehashes much of its previous argument by arguing the exact piece of flooring T.J. slipped on did not appear wet. *See* [ECF No. 90 at 15]. The Court has already addressed this argument. *See supra* § III.B (citing *Brady*, 33 F.4th at 1281).

As to notice, the Eleventh Circuit held in *Sorrels v. NCL (Bahamas) Ltd.* that the posting of warning signs is sufficient to demonstrate that the defendant had actual or constructive notice that the subject surface could be slippery when wet. 796 F.3d 1275 (11th Cir. 2015). The court found that the presence of a warning sign, when "viewed in the light most favorable to [plaintiff], is enough to withstand summary judgment as to notice." *Id.* at 1289; *see also Merideth*, 49 F. Supp. 3d at 1094–95 (finding constructive notice when a warning was posted in the area where

plaintiff was injured); *Esanu v. Oceana Cruises, Inc.*, 49 F. Supp. 3d 1078, 1080–81 (S.D. Fla. 2014) (same).  However, "[n]ot all warning signs will be evidence of notice; there must also be a connection between the warning and the danger."  *Guevara*, 920 F.3d at 721.

Here, Plaintiff points to testimony from crewmember Ubaidillah that his job was to dry the pool deck to prevent guests from slipping, and that housekeeping was trained to place caution signs and block off wet areas. *See* [ECF No. 111 at 12]. Indeed, Ubaidillah agreed that his main job when assigned to Deck 16 pool was to "keep the floor dry[,]" and that this was done "[t]o avoid the guest slipping." *See* [ECF No. 89-6 at 69:20–70:9]. He also agreed that a wet floor around the pool was "very slippery." *See* [*id.*]. Ubaidillah was also instructed by Defendant to "always check the area, make sure no water and then there [are] no guests falling down[,]" and was apprised that water on the floor creates the risk for a guest to slip and fall. [*Id.* at 76:1–10]. Ubaidillah also confirmed that upon seeing a wet area on the deck, he was trained to place a caution sign in the area, mop up the wet area using a cloth mop, and ensure the area was dry before removing the caution sign. [*Id.* at 82:9–83:13]. Moreover, as further testified to by Ubaidillah and crewmember Harry King, and as shown by Defendant itself, "Caution Wet Floor" signs were placed at various places on the pool deck "to remind passengers to be wary of any wet conditions that traditionally arise around pools[.]" *See* DSMF ¶ 19. Both Ubaidillah and King testified that six of the caution signs are placed around the pool: one at each entrance and one on each side of the pool. *Id.* ¶ 20. The signs on the sides of the pool are moved to areas with accumulated water as crewmembers mop or are placed in areas that were just mopped. *See id.*

17

Lastly, CCTV footage shows another passenger slipping in the same area as T.J. roughly forty-seconds after T.J. fell.[7] Shortly thereafter, a crewmember, identified as Ubaidillah, appears with what looks like a cloth mop and begins mopping around the area where T.J. fell. In a separate video, Ubaidillah testified that he later again appears with the cloth mop and a caution sign and places the sign in the area where T.J. fell. [ECF No. 89-6 at 142:17–143:18]. Ubaidillah testified that he did so because someone fell and the floor "[was] still wet." [*Id.*].

Considering the evidence, the Court finds that there is a sufficient connection between the warning signs and Defendant's employee's actions, and the hazard Plaintiff alleges caused T.J. to fall as to create a genuine dispute of material fact regarding notice. Indeed, the record is clear that Defendant places "Caution Wet Floor" signs throughout the pool deck to ostensibly warn passengers of the danger a wet pool deck can cause. *See* DSMF ¶ 19 (caution signs are placed "as an additional precaution to remind passengers to by wary of any wet conditions that traditionally arise around pools"). Defendant's crewmembers are instructed to dry any wet spots or accumulation of water they find on the pool deck to "avoid the guest [from] slipping[.]" *See* [ECF No. 89-6 at 70:5]. Moreover, CCTV footage shows crewmembers in the area around the time of T.J.'s fall as well as shortly after, when the second guest slips and falls. *See Diego v. MSC Cruises, S.A.,* No. 22-CV-22508, 2024 WL 2880699, at *8 (S.D. Fla. June 6, 2024) (noting constructive notice can be established where defendant's employees were in vicinity of dangerous condition and should have known of dangerous condition) (citing *Plott v. NCL Am., LLC*, 786 F. App'x 199, 203 (11th Cir. 2019)). Thus, the above evidence is enough to reasonably infer that Defendant knew, or should have known, the pool deck would become slippery when wet and is therefore enough to

---

[7] Indeed, CCTV footage shows another passenger slipping in the same area as T.J. and directly in front of T.J. as she is being comforted by her mother and a crewmember.

withstand summary judgment as to notice. *See Brady*, 33 F.4th at 1283 ("That's because a reasonable inference from the placement of the caution sign is that Carnival knew that the Lido Deck would become slippery when wet[,]" even when signs were not directly in area of fall); *Sorrels*, 796 F.3d at 1289–90 ("[T]he issue is whether NCL had actual or constructive knowledge that the pool deck where Mrs. Sorrels fell could be slippery (and therefore dangerous) when wet, and whether it negligently failed to post a warning sign after the rain that preceded [the] accident."); *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020) (reversing summary judgment as to notice where defendant was not aware of specific chair plaintiff tripped over, but "evidence reflect[ed] that Carnival took corrective measures to [generally] prevent people from tripping over the lounge chairs in the walkway on Deck 11").

Moreover, in the alternative, Plaintiff also provides sufficient instances of substantially similar incidents. *See Lebron*, 818 F. App'x at 920. Indeed, Plaintiff has identified several slip-and-falls on the subject deck surface at issue in the last three years. *See* [ECF No. 111 at 13–14]. Of these, seven occurred on the same pool deck as T.J.'s fall. *See* [*id.*]. When only looking at the incidents on the *Mardi Gras*, guests previously reported slipping after "stepping down the steps of the pool" [ECF No. 89-23], slipping "while exiting pool" because the "water [was] slippery" [ECF No. 89-27], slipping while "getting out of pool" caused by "slippery floor" [ECF No. 89-24], slipping caused by "puddles" and "not realiz[ing] how slippery [the] deck floors were" [ECF No. 89-21], and slipping while line dancing on the lido deck due to a "slippery deck" [ECF No. 89-22]. Indeed, one of the incidents also involved a slip and fall as the guest was descending from the raised pool coping, similar to T.J. *See* [ECF No. 89-28 at 24:22–25:22 (passenger detailing stepping down from raised pool boundary and slipping)]. Here, T.J.'s incident, and those recorded in the passenger statements, "are similar enough to allow the jury to draw a reasonable inference"

19

regarding the cruise ship's "ability to foresee" the accident at issue, and enough to withstand summary judgment as to constructive notice. *See Worley v. Carnival Corp.*, No. 21-CIV-23501, 2023 WL 1833840, at *9 (S.D. Fla. Feb. 1, 2023), *report and recommendation adopted*, No. 21-23501-CIV, 2023 WL 2346338 (S.D. Fla. Mar. 3, 2023) (quotations and citations omitted).

Defendant contests this by arguing that T.J.'s fall was different because she "jumped" from the pool boundary, whereas other guests stepped down.  *See* [ECF No. 90 at 19]; *see also* DSMF ¶ 38; DRSMF ¶ 28. The Court has already noted that a dispute remains as to the method of T.J.'s descent from the pool boundary. *See supra* § III.C at 13–14. Nevertheless, the "substantial similarity doctrine does not require identical circumstances, and it allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Worley*, 2023 WL 1833840, at *9 (citing *Sorrels*, 796 F.3d at 1287). Indeed, here, the proper question is whether Defendant had actual or constructive notice that the Deck 16 pool deck could become unreasonably slippery when wet and could cause guests to fall. The Court finds the evidence on the record to be sufficient to infer Defendant's knowledge as to withstand summary judgment. *See Cosmo*, 272 F. Supp. 3d at 1341 (denying summary judgment as to notice where plaintiff jumped over lounge chair before fall and stating plaintiff "does not contend that the chair, or his jumping, was the dangerous condition; rather he complains the floor was too slippery[,]" and highlighting twenty-nine prior slip and fall incidents). Whether T.J.'s mode of descent contributed in some way to the cause of her injuries is a factual dispute better left to the jury. *See Saliba v. Hillstone Rest. Grp. Inc.*, No. 6:22-CV-1498-RMN, 2023 WL 9468264, at *3 (M.D. Fla. Dec. 14, 2023) ("The circumstances of the accident involve factual disputes that the jury should decide.").

Therefore, the undersigned **RECOMMENDS** that summary judgment be **DENIED** as to this aspect.

**IV.   CONCLUSION**

**THEREFORE**, for the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion for Summary Judgment [ECF No. 90] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the assigned United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except on grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**SIGNED**, this 24th day of February, 2026.

LISETTE M. REID
UNITED STATES MAGSISTRATE JUDGE

cc:  All counsel of record

21